## RAILROAD COMMISSION et al. v. HUM-BLE OIL & REFINING CO. et al.

### No. 8759.

Court of Civil Appeals of Texas. Austin.
June 29, 1938.

Rehearing Denied Sept. 21, 1938.

Wm. McCraw, Atty. Gen., and Chas. D. Rutta, Asst. Atty. Gen., for appellant Railroad Commission.

Felts, Wheeler & Wheeler, of Austin, for appellant Acme Oil Co.

C. J. Brannan, of Wichita Falls, for appellee Baldwin-Sultan Oil Co.

R. E. Seagler and Rex G. Baker, both of Houston, and Powell, Wirtz, Rauhut & Gideon, of Austin, for appellee Humble Oil & Refining Co.

BAUGH, Justice.

This is a rule 37 case. Appeal is by the Acme Oil Company and the Railroad Commission from a judgment of the District Court setting aside as invalid a permit granted by the Commission to the Acme Oil Company on December 9, 1935, to drill well No. 5 on its 10-acre tract in Rusk County in the fairway of the East Texas oil field. The Humble, owner of the lease adjoining said tract on the south brought this suit, in which the Baldwin-Sultan Oil Company, owner of the adjacent lease on the west of the Acme tract, intervened.

The following facts are undisputed: In 1934 the Acme applied to the Commission for a permit for a fifth well on said 10-acre tract as an exception to rule 37 at aproximately the same location as the one here involved. After a full hearing thereon the Commission on December 13, 1934, denied said application. The Acme thereupon filed suit in the District Court of Travis County to set aside such refusal and to enjoin interference with the drilling of said well on the grounds that same was necessary to prevent confiscation of its property and to prevent waste. A final judgment was rendered in that case against the Acme from which no appeal was prosecuted.

In September, 1935, the Acme filed another application for a fifth well on its tract less than 20 feet from the location of the one first applied for. On the hearing on that application no evidence whatever is shown to have been introduced by the applicant, the Acme contending that it was entitled to such well under the showing made by it at the hearing on its first application. The protestants, appellees here, thereupon introduced before the examiner for the Commission the record made at the first hearing, and their attorneys made the statement that the Commission had, on June 11, 1935, again refused to permit the Acme to drill an additional well on said tract; that the conditions had not changed since the first hearing; and contended that under the holding of this court in Shell Petroleum Corp. v. Railroad Commission, 86 S.W.2d 57, in the absence of any showing of changed conditions taking place since the first hearing before the Commission, the judgment of the District Court on the first order of the Commission was res adjudicata. of the Acme's rights to said permit.

After judgment herein the trial court, upon application of appellees, made and. filed his findings of fact wherein he found, among other things: "That the contentions and grounds presented to the court in cause No. 54938 as a basis for obtaining well No. 5 in such case are substantially the same contentions as presented by Acme Oil Company in the present case to sustain well No. 5, and that this court has previously tried such contentions and decided the same adversely to the Acme Oil Company, and no new facts or circumstances were presented, and the evidence showed that there had been no sufficient change of conditions to justify said well No. 5 in the present case."

The court thereupon concluded that the former judgment was res adjudicata of the issues presented in the instant suit and rendered judgment accordingly.

The general rule as to the application of res adjudicata is that a final judgment disposes of all issues made by the pleadings in such cause, unless the judgment itself excludes some of them from the adjudication. Hermann v. Allen, 103 Tex. 382, 383, 128 S.W. 115, 116. It has been held that a judgment "is not only final as to the matter actually determined, but as to every other matter which the parties might litigate in the cause, and

which they might have had decided." Foster v. Wells, 4 Tex. 101; Nichols v. Dibrell, 61 Tex. 539; Freeman v. McAninch, 87 Tex. 132, 27 S.W. 97, 47 Am. St.Rep. 79; Moore v. Snowball, 98 Tex. 16, 81 S.W. 5, 66 L.R.A. 745, 107 Am.St. Rep. 596; 26 Tex.Jur. 135. In the former case the Acme sought to set aside the order of the Commission denying it such permit on the grounds that such well was necessary to prevent confiscation of its property and to prevent waste. In rendering judgment against it, the judgment of the court necessarily, we. think, adjudicated these issues. While that judgment did not bar the Acme from again applying to the Commission for such permit, it did effectively adjudicate its right thereto unless and until conditions were shown to have so changed as to create new rights in the Acme Company and to make the former adjudication inapplicable. And when the judgment of the District Court was rendered on these issues, absent any material changes occurring subsequent thereto, that judgment was as binding on the Commission as it was on the other parties to that suit. If this were not true, and the Commission were permitted, after adjudication, to reverse its action without changed conditions, such adjudication would mean nothing, and relitigation of the same questions would result whenever the Commission saw fit to change its order. This same issue was presented to and determined by us in Shell Petroleum Corp. v. Railroad Commission, 86 S.W.2d 57, supra. It was also considered and effectually disposed of by the Supreme Court in Magnolia Petroleum Co. v. New Process Co., 104 S.W.2d 1106, at page 1110, in the following language:

"Finally, we desire to say that we have already demonstrated that in this cause we are not dealing with the right or power of the Railroad Commission to hear and grant an application for a well permit once refused by the judgment of a court of competent jurisdiction after passing on the merits of the case. We will say, however, that we are of the opinion that the Railroad Commission is without power to review or set aside judicial orders and decrees. In such instances the commission can only grant an application for a well where there is a showing of changed conditions.

"It may be argued that under the above ruling there can be no finality to litigation

in the courts where the refusal of well permits are involved. In the sense that such judgments do not absolutely determine and foreclose the matter for all time in spite of changed conditions, this is true; but in the sense that such judgments do determine rights up to the time the commission acted, and thereafter until there is a change of conditions, such judgments contain every element of finality."

It has been held that, in the absence of any objections or exceptions made by appellants to the findings of fact made by the trial court, or any request on the part of appellants for corrective or additional findings, we are not required to examine the statement of facts to ascertain if the evidence sustains those findings. See Broussard v. Beaumont Rice Mills, Tex.Civ.App., 115 S.W.2d 1235; Hardwicke v. Trinity Universal Ins. Co., Tex. Civ.App., 89 S.W.2d 500. However that. may be, it affirmatively appears that there were no changes in the location and number of wells to north of this 10-acre tract between December 13, 1934, and December 9, 1935, the area on which the Acme relied to show drainage from its tract in both applications. In all other directions the drainage situation remained substantially the same and the density on the other surrounding adjacent tracts was shown to be less than on the Acme tract with four wells already located thereon. Manifestly the change in the location of the well granted, less than 20 feet from the one formerly refused by the Commission, was not a material change.

Appellants contend, however, that the evidence showed that between December 13, 1934, and December 9, 1935, some 3,600 additional wells had been drilled in the entire field; that during that period the bottom hole pressure of all wells in this area had been reduced; that in the area here involved the daily allowable per well had been reduced from 25 barrels to 20.7 barrels; that as a result the Acme was on December 9, 1935, extracting only 84 barrels of oil per day from its 10-acre lease as against 100 barrels per day on December 13, 1934; and that consequently these facts showed such changed conditions as would sustain the permit here involved.

■ Such contention cannot, we think, be sustained. Even if it be conceded that the Acme's rights to an exception to rule 37 be referable to the field as a whole, and not to the factual situation in the area of its tract, it is not controverted that on that basis the Acme tract was still drilled to a greater density than the average for the field as a whole. Nor is it denied that the reduction of bottom hole pressure of wells was a condition common to the entire field and the result of the withdrawal from the field as a whole of oil during the 12 months period. The reduction in the daily allowable per well was likewise applicable to the entire field and affected all other tracts in said field in the same manner as it did the Acme's tract. None of these changes was peculiar to the tract involved, but all affected the surrounding leases in the same manner and to the same extent as they did the Acme's lease. No changes were made during this period in the spacing provisions of rule 37, nor in the grounds for granting exceptions thereto, and consequently such changes had no bearing upon the relative rights of the parties to this suit, nor any bearing upon the grounds which would authorize an exception to said rule. They did not, therefore, in our opinion, constitute a change of conditions within the meaning of these terms as used in the New Process Case.

■ In addition to the Acme's brief the Attorney General, on behalf of the Railroad Commission, again makes the contention that appellees did not show themselves interested persons affected by the Commission's order within the meaning of Sec. 8, Art. 6049c, Vernon's Ann.Civ. Stats., as amended. This same question has been determined by us adversely to appellants' contention in Empire Gas & Fuel Co. v. Railroad Commission, Tex. Civ.App., 94 S.W.2d 1240, writ refused; Murphy v. Turman Oil Co., Tex.Civ.App., 97 S.W.2d 485; Smith County Oil & Gas Co. v. Humble Oil &. Ref. Co., Tex.Civ. App., 112 S.W.2d 220, and need not be further considered here.

Finding no error in the record, the judgment of the trial court will be affirmed.

Affirmed.