## ATLANTIC REFINING CO. et al. v. BUCKLEY et al.

### No. 8699.

Court of Civil Appeals of Texas. Austin.

May 25, 1938.

Rehearing Overruled Nov. 30, 1938.

Dissenting Opinion Dec. 30, 1938.

Thomas R. Freeman, of Dallas, and Black, Graves, & Stayton, of Austin, for appellant Atlantic Refining Co.

Walker, Smith, & Shannon, of Fort Worth, for appellant Kewanee Oil & Gas Co. and Kewanee Oil Co., its successor.

John T. Buckley, of Longview, for appellees.

BAUGH, Justice.

This is a rule 37 case. Appeal is from a judgment of the trial court sustaining the validity of a permit granted by the Railroad Commission to John T. Buckley, as an exception to rule 37 to prevent confiscation of property, to drill a well on a .16-acre tract of land in Gregg County, near the center of the East Texas oil field. The permit was granted on July 27, 1936. The Railroad Commission has filed no brief herein.

The case arose as follows: In 1925, G. E. Adams acquired title to a 48-acre tract of land out of the Hathaway survey. Its boundaries ran north and south, and east and west. Adjacent to this tract on the east C. E. Davis and others owned a 117-acre tract. The S. E. corner of the Adams tract was also the S. W. corner of the Davis tract. A continuation of the south line of the Adams tract formed the south line of the Davis tract. In October, 1930, Davis executed an oil and gas lease on his tract, calling for adjoinder to the Adams tract on the west. On January 1, 1931, Adams executed an oil and gas lease on his lands covering same to the common boundary line between his tract and the Davis tract. The lease on the Davis land, adjacent to and including the tract here in controversy, through assignments was acquired by, and at the time the permit was granted was owned by, the O. W. R. Oil Company. The lease on the Adams land, adjacent to the controversial tract, was acquired by the Kewanee Oil & Gas Company. Lease on the tract to the south of and adjacent to both the Adams and Davis tracts was acquired by the Atlantic Refining Company. These three companies have developed their respective tracts.

On April 30, 1936, G. E. Adams filed a trespass to try title suit against C. E. Davis et al., asserting title by limitation to the .16-acre tract here involved. Its location and dimensions are shown on the attached map. Though this tract of land was included within the field notes of the lease originally made by the Davises more than five years before and now owned by the O. W. R. Oil Company, it was not made a party to that suit. In this connection we quote the findings made by the trial court:

"As the suit brought by G. E. Adams against M. J. Davis et al., in the Special District Court of Gregg County, Texas, and numbered 9882-C on the docket of said court, was filed on April 30, 1936, and as a disclaimer was filed by the defendants in said cause on the same date, and as on the same date a judgment was entered therein, and as defendant John T. Buckley represented the defendants in the above entitled and numbered cause and as John T. Buckley paid all costs in said cause, and as C. E. Davis, one of the defendants in the above mentioned suit, has been given an oil payment out of a portion of the oil to be produced from the alleged .16-acre G. E.

Adams tract, I find that in all probability the above mentioned suit brought by G. E. Adams against M. J. Davis et al., was a collusive proceeding brought for the sole purpose of enabling the defendant John T. Buckley to obtain a drilling permit as an exception to the spacing provisions of rule 37 governing the drilling of wells in the East Texas Oil Field."

Notwithstanding these findings, the trial court concluded that such collusive proceeding was immaterial on the question of Buckley's right to a permit. In this we think the trial court erred. The trial court probably concluded that it was bound by the judgment awarding title to this land to Adams, and that same was entitled to be developed as a separate tract. While it is not necessary for us to pass on the validity of the judgment as to title to the fee in that case, as that question is not properly before us, it is not amiss to say, in passing upon the question of the right to a permit, and the segregation of this tract from the larger tract; and as bearing upon the collusive effort to circumvent the conservation laws, and the spacing provisions of Rule 37, that the record before us fails to

show that Adams had, under the limitation statutes, acquired a limitation title to the land in question. We are not to be understood as holding that the judgment as between Adams and the Davises is not valid. But under the undisputed facts it was manifestly but an attempt between them to accomplish by such procedure what they could not accomplish by a voluntary conveyance. It was tantamount, under the facts, to a consent judgment, or an agreed judgment, and Adams obtained no greater rights thereunder than if he had acquired same by contract or conveyance from the Davises. Empire Gas & Fuel Co. v. Railroad Commission, Tex.Civ.App., 94 S.W. 2d 1240, 1242, writ ref.; Turnbow v. Barnsdall Oil Co., Tex.Civ.App., 99 S.W. 2d 1096, writ ref.; Stewart v. Smith, 126 Tex. 292, 83 S.W.2d 945. And inasmuch as the judgment obtained by Adams, upon which Buckley relies for his right to a permit, was but a circuitous effort to secure, as a vested right, that to which he would not otherwise be entitled, the adjacent lessees, whose property rights were materially affected, were clearly entitled to show such facts, though not parties to that suit. Turman Oil Co. v. Roberts, Tex.Civ.App., 96 S.W.2d 724, writ ref.

The well in question, which was shown to have been drilled and to be producing at the time of the trial, was located 25 feet from the line of the Atlantic's tract and 20 feet from the line of Kewanee's tract. The evidence also showed, as is manifest from the size and shape of this tract, that if all adjacent lessees be permitted to drill sufficient offset wells on their leases to prevent drainage to appellee Buckley's well from beneath their lands, a congestion, or density, of drilling would be required wholly out of proportion to the density in the surrounding area. The evidence also showed that because of the size and shape of said tract, even with equidistant offsets, because of the porosity and thickness of the oil producing sands thereunder, and minimum allowable under which production could not be reduced under the proration laws, the Buckley well would, during the estimated producing life of the field, recover several times the estimated amount of oil in place beneath this tract. The net result of this would be that under the guise of protecting this small tract from confiscation, he would be enabled to confiscate oil from adjacent tracts.

Many contentions are made, both by appellant and appellee, involving waste, density of drilling of the surrounding areas, whether if this small tract be treated as a part of the O. W. R. Oil Company's lease the whole tract would then be entitled to an additional well. But because of the fact that this .16-acre tract was voluntarily segregated from a larger tract, long after the field had been developed and rule 37 had applied, so as to necessitate an exception to the rule; the fact the Commission by amendment to rule 37, has expressly provided that it will not consider unauthorized subdivisions in granting exceptions to said rule; and the further fact that it affirmatively appears in the instant case that the Commission not only did not grant said permit on the grounds that this tract, if treated as a part of the O. W. R. Oil Company's larger tract, would be entitled to a well because it had theretofore refused to permit an additional well on the O. W. R. Oil Company's tract;—all of these facts compel the conclusion that this .16-acre tract was treated as a unit separate and apart from the O. W. R. Oil Company's tract, and that under the mistaken conclusion that it was entitled to development as a separate tract, the permit was granted. That being true, under the numerous cases decided by this court, beginning with Humble Oil & Ref. Co. v. Railroad Commission, 68 S.W.2d 625, relating to voluntary subdivisions under such circumstances; approved by the Supreme Court in Brown v. Humble Oil & Refining Co., 126 Tex. 296, 83 S.W.2d 935, 87 S.W.2d 1069, 99 A.L.R. 1107, 101 A.L.R. 1393; Stewart v. Smith, 126 Tex. 292, 83 S.W.2d 945; and reaffirmed in Railroad Commission v. Magnolia Pet. Co., 130 Tex. 484, 109 S.W.2d 967, 970; it becomes manifest that the permit here involved cannot be upheld. The permit granted to appellee Buckley is therefore set aside as invalid. To this extent the judgment of the trial court is reversed and judgment here rendered in favor of appellants. As to the other relief sought, the cause is reversed and remanded to the trial court with instructions to grant such other relief as may be appropriate under the facts.

Reversed and rendered in part, and in part reversed and remanded with instructions.

BLAIR, Justice (dissenting).

The writer dissents from the majority judgment striking down the permit to drill the oil well in question. In the main the majority view is predicated upon the

ground that fraud was practiced upon the Commission to obtain the permit by an alleged collusive judgment of the District Court, which is held to be a voluntary subdivision of the .16-acre tract in question from the larger 23-acre O. W. R. tract after the effective date of Rule 37. The Commission could not have been defrauded by the alleged collusive judgment partitioning the .16-acre tract from the larger tract, because it knew all about the alleged collusive judgment when the permit was granted, the alleged collusive judgment being urged as a ground for denying the permit. Manifestly the Commission granted the permit to drill the well upon the ground that if this small tract be treated as a part of the O. W. R. tract from which it was partitioned by the judgment, the whole tract would be entitled to the additional well in accordance with the rule insisted on by the Commission and sustained by the Supreme Court in the Magnolia Case, 130 Tex. 484, 109 S.W.2d 967. The Commission has urged this ground in defense of the permit in the instant case both in the trial court and in this court. The majority view is necessarily in conflict with said Magnolia Case for the reason that the Commission's order, as held in that case, "may be supported upon a ground different from that recited in the order," [page 971] and for the reason that the undisputed evidence showed that if the .16-acre tract be considered as a part of the larger tract from which it was partitioned, the whole tract was entitled to the additional well in order to afford the owners an equal opportunity to recover their fair share of the oil thereunder.

The expert witness for appellant testified that from a purely offset well theory, the two tracts considered as a whole had sufficient wells to protect the whole tract, but that the adjoining leases of appellants from the standpoint of density of wells had the advantage over the .16-acre and 23-acre tracts considered as a whole. His testimony was as follows:

"Q. Each of the protestants in this case, then, have the advantage on the well density basis at the time of the granting of this permit; is that correct? A. That is correct.

"Q. Now isn't it a fact, Mr. Parker, that both the Kewanee and the Atlantic leases have been developed under exceptions to Rule 37 on spacing? A. You mean by that do they have less than one well to ten acres on the entire lease?

"Q. Yes. A. That is correct."

This testimony brings the instant case in every respect within the rule announced in the Magnolia Case, supra.