**BUCKLEY et al. v. ATLANTIC REFINING CO. et al.**

CO. et al.

No. 3771.

Court of Civil Appeals of Texas. Beaumont.

Nov. 28, 1940.

Rehearing Denied Jan. 22, 1941.

Hamilton, Harrell, Hamilton & Turner and Marion S. Church, all of Dallas, Gerald C. Mann, Atty. Gen., Jas. P. Hart, Asst. Atty. Gen., W. F. Bane, of Dallas, A. L. Camp, of Fort Worth, and Ed Roy Simmons, Asst. Atty. Gen., for appellants.

Black, Graves & Stayton, of Austin, C. B. Ellard, of Dallas, Walker, Smith & Shannon, of Fort Worth, for appellees.

COMBS, Justice.

This suit involves the validity of an order of the Texas Railroad Commission permitting the drilling and operation of an oil well upon a small tract of .16 acre in the East Texas oil field as an exception under Rule 37 pertaining to the spacing of wells. The trial court held the order invalid, and this appeal was prosecuted by the owners of the lease and the Texas Railroad Commission as a statutory appeal under Vernon's Ann.Civ.Stat. Article 6049c, Section 8. The order involved here is the second granted by the Commission granting a permit for the drilling and operation of a well on the tract involved. The first one was granted July 27, 1936, to John T. Buckley, the then owner of the lease on the small tract. That order was granted upon a finding that the drilling of the well was necessary to prevent confiscation of property, the small tract being treated as a segregated tract. That order was attacked by the Atlantic Refining Company et al. in the District Court of Travis County, which court held it valid. But on appeal to the Austin Court of Civil Appeals, the case was reversed and rendered, the court holding that the small tract had been segregated from the larger tract by a collusive or consent judgment and should not be treated as a segregated tract. See Atlantic Refining Company v. Buckley, Tex.Civ.App., 123 S.W.2d 413.

Thereafter, Cliff Drilling Company et al. owning the working interest on the lease on the smaller tract, successors in the title of Buckley, applied to the Railroad Commission for an order to permit the drilling and operation of a well on the same location covered by the former permit. In fact, it appears that the well had already been drilled under the former permit before it was set aside. A hearing was held by the Railroad Commission on May 18, 1939, and on July 1, 1939, an order was entered granting the permit for the drilling and operation of a well on the ground that it was necessary to prevent waste and also to prevent confiscation of property. That order is the one involved here. The Commission entered findings of fact with reference to the necessity for the production from the well. It found that considering the smaller tract of .16 acre as a part of the larger tract from which it had been detached, as the Court of Civil Appeals had held it should be in the case above cited, still on the evidence the production was necessary to prevent waste and also to prevent confiscation of property. Thereafter, Atlantic Refining Company, which owns the adjacent lease on the south, and Kewanee Oil Company, which owns the lease on the west of the tract in question, brought this suit to set the order aside. The order was attacked upon the following grounds: (1) That the validity of this permit was res adjudicata by reason of the judgment in prior litigation holding the order of July 27, 1936, invalid; (2) there had been no change of conditions since said adjudication justifying the granting of said permits; (3) that the Railroad Commission did not have authority to entertain the second application for a permit because some of the issues in the prior litigation had not been disposed of; (4) the evidence before the Railroad Commission and the facts did not justify the granting of the permit either to prevent the confiscation of property or the physical waste of oil and gas; and (5) the permit order violated the constitutional rights of the plaintiff and the intervener by permitting the drainage of oil from their leases. Upon a trial to the

court without a jury, the trial court entered judgment setting aside the order and enjoined the operation of the well and ordered it plugged. From that judgment, the Railroad Commission and the permittees have prosecuted this appeal. The appeal was originally to the Court of Civil Appeals at Austin and the case is before us on transfer by the Supreme Court.

## Opinion.

We overrule appellees' contention that the order of the Railroad Commission was invalid because res adjudicata by reason of the judgment of the Court of Civil Appeals in Atlantic Refining Company v. Buckley, 123 S.W.2d 413 above referred to. It is true that the principle of res adjudicata has application in cases involving permits for drilling as an exception to Rule 37, where the same matter has been formerly litigated and final judgment entered, and there has been no change of condition. But we think this principle applies only as to the issue or issues on which the Commission actually rested its findings and order. Gulf Land Company v. Atlantic Refining Company, 134 Tex. 59, 131 S.W.2d 73; Gulf Land Company v. Atlantic Refining Company, 5 Cir., 113 F.2d 902. In the present case the issues determined by the Railroad Commission in announcing its findings and entering its order are not the same issues involved in the former order held invalid by the court in the case cited.

In making the former order the Commission considered the .16 acre as a separate tract and rested its findings and order granting permit for the well upon that assumption. It made findings based thereon, to the effect that threatened drainage by wells on adjacent tracts made the drilling necessary to prevent confiscation of property. Thus the Commission grounded its findings and order upon an erroneous conclusion that the smaller tract should be considered separately. It was that basic consideration which rendered the order invalid. Here the Commission grounded its findings and order upon a different basis. The smaller tract was not separately considered, but was considered only as a part of the larger tract from which it had been detached. As so considered and upon evidence deemed sufficient, the Commission found that drilling and operation of a well in the same location covered by the former order was necessary to prevent confiscation of property. And it was found further that such development was necessary *to pre-*

*vent waste,* a matter not determined at all in the making of the former order.

A court judgment, declaring invalid an order of the Railroad Commission granting a permit for the drilling of a well as an exception to Rule 37 to prevent confiscation of property, is not res adjudicata of the validity of a subsequent order granting a permit to drill a well on the same location on the ground of preventing waste. Gulf Land Company v. Atlantic Refining Company, 134 Tex. 59, 131 S.W.2d 73; Gulf Land Company v. Atlantic Refining Company, 5 Cir., 113 F.2d 902; Humble Oil & Refining Co. v. Turnbow, Tex.Civ.App., 133 S.W.2d 191. It has also been held that a judgment, declaring invalid an order granting a permit for the drilling of a well upon a small tract improperly considered as a separate tract, is not res adjudicata of a subsequent order and permit for the drilling of a well on the tract when considered by the Railroad Commission as a part of the larger tract from which it had been detached. Humble Oil & Refining Company v. Potter, Tex.Civ.App., 143 S.W.2d 135; Humble Oil & Refining Company v. Lassester, Tex.Civ.App., 120 S.W.2d 541, 542. In the latter case Chief Justice McClendon speaking for the Austin Court of Civil Appeals said:

"Where, independently of the voluntary segregation, the larger tract, including the segregated tract, is entitled to an additional well in order to protect the vested rights of the owners of such larger tract to recover their fair share of the oil thereunder in place, the permit to drill on the segregated tract will be upheld. And this, although the application be made to drill only upon the voluntarily segregated tract and only by the owners of that tract, and be contested by the owners of the remaining portion of the larger tract.

"Since the orders of the Commission prima facie import verity, the general well recognized rule applies that the burden of proof rests upon one attacking a permit granted to drill on a voluntarily segregated tract to protest vested rights to show that, as applied to the entire tract as it existed before segregation, the well was not warranted as a protection to vested rights."

The appellees contend further that the evidence before the Railroad Commission and before the trial court established that the findings of the Commission to the effect that drilling and operation of the well in question was necessary to prevent waste

and to prevent confiscation of property were without support. This contention is overruled. Our construction of the evidence is that the issues of both waste and confiscation of property were issues of fact for the determination of the Commission in the first instance and that the fact findings of the Commission on both issues had support. At the hearing before the Commission, Gordon Griffin, an expert witness testified that the well in question was necessary to prevent waste, and that if it were not allowed to produce, there would be thousands of barrels of oil left under ground which would never be recovered. J. S. Hudnall, another expert witness, testified before the Commission that the operation of the well would result in an increased recovery of 47,579 barrels of oil. He also testified that because of the manner in which the field had been drilled in this vicinity, there was an area of approximately 8.88 acres within which no well had been drilled, although the average density of drilling in vicinity was one well to approximately 3.86 acres. He testified further that the well in question would reduce the undrilled area so that the average density would be about that of the surrounding area, and that the location of the well as fixed by the permit was an ideal location for the purpose of promoting uniformity of drilling and recovery of the greatest amount of oil from the reservoir. It was also testified in substance that the drilling and operation of the well would give the larger tract of which the .16-acre tract is a part, its fair proportion of the recoverable oil. These two witnesses offered by the proponents were the only expert witnesses who testified at the hearing before the Commission, the appellees having offered none. At the district court trial they testified in substance to the same effect but were cross-examined at great length by the appellees. The appellees also offered an expert witness, R. D. Parker. Both by the cross-examination of the appellants' witnesses and by testimony of their witness Parker, appellees raised issues against the findings of the Commission on the questions of waste and confiscation of property. But it is clear we think that they did no more than to raise fact issues on these points. There was evidence to support the findings of the Commission, and such being the case, the court could not substitute its findings for those of the Commission. Gulf Land Company v. At-

lantic Refining Company, 134 Tex. 59, 131 S.W.2d 73.

But the appellees insist that they brought this suit not merely as a proceeding in the nature of an appeal from the Railroad Commission's action in granting the permit as a statutory proceeding under Article 6049c, Section 8, but also "as a proceeding in equity to restrain the production of any oil from any well operated pursuant to said permit, and to cancel the permit * * * upon the ground that plaintiff's constitutional rights have been violated by the issuance of said permit." In that connection they say, and they so plead, that the appellants had secured their drilling permit as a result of fraudulent and collusive conduct; that the spacing of the well by appellants would drain large quantities of oil from Atlantic's property, and that Atlantic could not prevent such drainage without the expenditure of large sums of money, and that as a result of the Commission's action in granting the permit, Atlantic will be deprived of its property without due process of law. Appellee Kewanee in its petition of intervention took substantially the same position.

Regardless of whether or not the appellees have the right to prosecute this case in the nature of a bill in equity on the grounds alleged, and thus test the validity of the order of the Railroad Commission independently of the procedure provided by the statute, we think they failed to make a showing that their property has been or will be taken without due process of law. They did offer evidence tending to show that the well in question will take considerable oil which they otherwise would succeed in taking from the reservoir by their wells. And also that the Davis tract upon which the well in question is located, and of which the .16 acre is a part, will recover more than its total recoverable oil, and that the .16-acre tract will recover some ten times as much oil as the recoverable oil supposed to be under the land. But it was also shown that appellees will recover more than the recoverable oil under their land. It was testified that the oil is migratory and is being forced by water pressure to migrate as oil is produced from the field. And so it seems probable that all parties at interest in this suit will obtain some oil now under lands belonging to others and thereby reduce the oil recovered by persons in some other part of the vast oil field.

1086

But we think the appellees established no right to prosecute this action other than as provided by the statute. Fundamentally the question involved is simply the administration of the spacing rule by the Railroad Commission. The statute prescribes an adequate legal remedy. Gulf Land Company v. Atlantic Refining Company, 134 Tex. 59, 131 S.W.2d 73. It does leave controverted questions of fact concerning the granting or withholding of permits to the sound discretion of the administrative agency, the Railroad Commission. But our Supreme Court in interpreting the law has left ample power in the courts to protect the fundamental rights of persons involved. In the above case the court makes it perfectly clear that while the Commission has the duty of passing in the first instance upon fact questions involved in the granting or withholding of a well permit, and that its findings in that regard are not to be set aside by the court and the court's judgment substituted therefor where there is substantial evidence to support the findings of the Commission, still the courts retain jurisdiction to pass upon all questions of law and also to determine whether the Commission has in any case acted "in a clearly illegal, unreasonable, or arbitrary manner." It seems to us that the statute as interpreted by our court of last resort provides proper and adequate legal safeguards for the rights of property. We can see no reason for holding that resort to remedies lying outside the act is necessary in a case such as this involving merely the application of the spacing rule. Should such become the rule of decision it would open an avenue of procedure whereby the courts could be converted into administrative agencies thereby taking over functions which the statute intends and public policy requires shall be committed to the Railroad Commission. In the Gulf Land Co. case our Supreme Court has clearly shown that this is not to be done. An order of the Railroad Commission which satisfies the test of validity thus prescribed by our Supreme Court does not contravene the "due process clause" of the Fourteenth Amendment. Texas Railroad Comm. v. Rowan & Nichols Oil Co., 310 U. S. 573, 60 S.Ct. 1021, 84 L.Ed. 1368, Id., 61 S.Ct. 66, 85 L.Ed. ——.

The judgment of the trial court is reversed and judgment here rendered for the appellants.

Reversed and rendered.