**GANT et al. v. LOWRY et al.**

**No. 3925.**

Court of Civil Appeals of Texas. Beaumont.

Nov. 21, 1941.

Rehearing Denied Dec. 10, 1941.

Powell, Rauhut & Gideon, of Austin, for appellants.

. Lasseter, Simpson, Spruiell & Lowry, of Tyler, Gerald C. Mann, Atty. Gen., and Edgar Cale, Asst. Atty. Gen., for appellees.

WALKER, Chief Justice.

This is a Rule 37 case. See Gulf Land Company v. Atlantic Refining Company, 134 Tex. 59, 131 S.W.2d 73, for a statement of this rule.

Appellants, W. H. Gant et al., plaintiffs below filed this suit against Oran Lowry, trustee, et al., defendants below, to cancel a permit issued by the Railroad Commission to appellee Lowry, and to enjoin his operation of the well on authority of the permit. The well in issue is Lowry's location No. 3. On trial to the court without a jury, judgment was entered that appellants take nothing by their suit, and that all relief prayed for by them against appellees be denied. Appellants appealed to the Austin

Court of Civil Appeals, and the case is on our docket by order of transfer by the Supreme Court.

The permit was granted Lowry on the sole ground of preventing waste. Appellants' first point is that, under the undisputed evidence, the permit in issue was not necessary to prevent waste. The permit was on Lowry's ten acre, Mrs. J. B. Hale lease, 160 feet wide north and south by approximately one-half mile east and west. Two wells had been drilled on this lease prior to the granting of the permit in issue; well No. 1 is spaced 331 feet east of the west end of the lease, and well No. 2 is spaced 1,007 feet east of well No. 1. The permit in issue located well No. 3 63 feet from the west end of the lease.

■ The law of appellants' proposition is that the findings of the Railroad Commission granting a permit to drill an oil well must be sustained by the courts, when the order has reasonable support in the evidence. The court in Buckley v. Atlantic Refining Company, Tex.Civ.App., 146 S.W. 2d 1082, 1085, announced the following proposition on this issue: "Both by the cross-examination of the appellants' witnesses and by testimony of their witness Parker, appellees raised issues against the findings of the Commission on the questions of waste and confiscation of property. But it is clear we think that they did no more than to raise fact issues on these points. There was evidence to support the findings of the Commission, and such being the case, the court could not substitute its findings for those of the Commission. Gulf Land Company v. Atlantic Refining Company, 134 Tex. 59, 131 S.W.2d 73."

■ The following summary of the evidence from appellees' brief supports the order of the Railroad Commission granting the permit in issue "to prevent waste."

"At the hearing before the Railroad Commission, which resulted in the granting of the permit in question, J. S. Hudnall, a geologist and witness for defendants, testified in substance as follows: That the lease in question is located on the east side of the Joinder area in the East Texas field, which portion of the field is the lowest pressure area in the entire field, and the bottom hold pressure underlying the lease involved is between 600 and 700 pounds per square inch as compared to the average for the pressure of the field of about 1058 pounds per square inch. This low

pressure area exists largely because of the tightness of the sand in this area. The lease in question is located in a very thin sand area with very radical changes from well to well. There has been drilled within 300 feet of this lease one dry hold, and another well has been plugged and abandoned, and within half a mile of it there are several wells that have already been plugged and abandoned. There are also a number of submarginal wells in the area which will not make 20 barrels of oil a day: that only the west 7.05 acres of the Lowry 10 acres lease will produce oil in commercial quantities. That the entire area is a pumping area, due to the low pressure and the tight sand conditions which exist; that due to the spacing in an east-west direction between the west well on the Lowry lease and the plaintiffs' well to which it offsets on the west being approximately 670 feet apart, the oil that underlies the west end of the Lowry lease will not be recovered by the wells now producing in that area due to this low pressure area and the tight and erratic sand conditions which exist; that the drilling of the well at the point sought will increase the total recovery from the lease and from the entire field, and prevent physical waste; that the location applied for is the best from the standpoint of preventing waste.

"R. D. Parker, a geologist and witness for plaintiffs, testified as follows: That he had made a study of the sand conditions of the area; that he agrees with Mr. Hudnall in respect to the sand being tighter in this area than other parts of the field; that it is substantially uniform with the exception of the sand thickness which increases as you go westwardly; that the sand in the area is a tight sand, less permeable and less porous than most of the field. He agreed with Mr. Hudnall that only the west 7.05 acres of the Lowry 10 acres lease was commercially productive of oil.

"The Railroad Commission Examiner's Memorandum states that Mr. Hudnall testified that this area has the lowest pressure in the field, the pressure under this lease being from 600 to 700 pounds per square inch as compared to an average of 1058 pounds per square inch for the field; that the sand is a very tight sand and very thin and that within 300 feet of this lease there has been one dry hold drilled and another well plugged and abandoned, and numerous other wells are submarginal; that in Hudnall's opinion the oil under the west

566

end of the Lowry lease cannot be recovered by the wells now in the area and that the drilling of this well will increase the total recovery from the lease and from the field. That the proposed location is good for the purpose of preventing waste and that a location midway between Lowry's wells 1 and 2 would also be good but that although that location would be farther from present producing wells, the sand there is thinner so that the proposed location is probably a better location for waste prevention purposes. That there is not as much oil now under this tract as there was in the beginning by a substantial amount; that he did not believe there was any substantial amount of oil being drained from the plaintiffs' tract which is not compensated by the structural position as oil is drained to it."

Appellants' second proposition is that "the Railroad Commission abused its discretion in granting the location 63 feet from plaintiffs' lease, the undisputed evidence having shown that if defendant Lowry needed another well, there was an equal or greater need for it between his wells Nos. 1 and 2, where it would cause less injury to plaintiffs than the location granted." This point is overruled. The location of the well under the permit was squarely before the Commission at the time the permit was granted. On cross-examination before the Commission, Mr. Hudnall testified that he thought that the location in issue was better than a location between Lowry's wells Nos. 1 and 2 for the reason that the oil bearing sand between wells Nos. 1 and 2 is thinner than at the point where the location was made; in his judgment there is approximately 50% less sand at the midway point between wells Nos. 1 and 2 than under the location in issue. On these facts it was Mr. Hudnall's conclusion that the location in issue was better for the purpose of preventing waste than a location between wells Nos. 1 and 2. The Commission accepted Mr. Hudnall's theory on the location of the well. The order of the Commission having substantial support in Mr. Hudnall's testimony, it was not illegal, unreasonable, or arbitrary under the rule announced by our Supreme Court in Gulf Land Company v. Atlantic Refining Company, supra.

■ Appellants' third point is that the court erred in denying its "alternative prayer for injunction against operation of the well, and injunction against issuance of authority to transport oil produced from the well until such time as said Railroad Commission shall adjust the allowable of wells on defendant Lowry's lease in such a way that the total allowable for all wells thereon shall not be increased by the drilling and operation of location No. 3." This proposition does not constitute error. Appellants have suffered no substantial injury from the drilling of the well under the permit in issue. Appellants' witness Mr. Parker testified on the trial of the case that, on the hydrostatic pressure theory, oil is now moving into appellants' lease from the west as oil is produced through their well. There was no showing that appellants had been or would be refused additional permits. The action of the Commission in not adjusting the allowable of the wells on Lowry's lease so as not to increase the total allowable from his lease violates no constitutional right of appellants. Gulf Land Company v. Atlantic Refining Company, 5 Cir., 113 F.2d 902, and Stanolind Oil and Gas Company v. Ambrose, 5 Cir., 118 F.2d 847.

It follows that the judgment of the lower court should be affirmed, and it is accordingly so ordered.

Affirmed.